JUDGE DAVID GUADERRAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2025 SEP -8 AM 10: 10

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**EP 25CV0372**

| | |
|---|---|
| RAMON CAMPBELL,<br>**Plaintiff,**<br><br>**v.**<br><br>**THE CITY OF EL PASO, a municipal corporation, OFFICER SEAN MICHAEL DEENAN #3459, individually and in his official capacity as a police officer with the City of El Paso, OFFICER JOHNATHAN RUIZ #3432, individually and in his official capacity as a police officer with the City of El Paso, OFFICER ROBERT ARTHUR SEELIG #3692, individually and in his official capacity as a police officer with the City of El Paso, OFFICER CHRISTOPHER HERNANDEZ #3706, OFFICER JUSTIN RODRIGUEZ #3577, individually and in his official capacity as a police officer with the City of El Paso, OFFICER NATHAN RYAN LEGARRETTA #3710, individually and in his official capacity as a police officer with the City of El Paso, and SERGEANT ROBERTO AZAR #2722, individually and in his official capacity as a police officer with the City of El Paso.**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    NO. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**INTRODUCTION**

This civil rights action arises from a systematic campaign of harassment, discrimination, and violence perpetrated by El Paso Police Department officers against Plaintiff Raymond

Campbell, a registered sex offender who owns and operates a lawful business. For years, these officers have targeted Campbell's business not based on legitimate law enforcement concerns, but because of their animus toward his status as a registered sex offender. This harassment culminated on August 29, 2024, when officers brutally assaulted Campbell during an unlawful arrest, then subjected him to further humiliation and endangerment while in custody. The pattern of abuse continues to this day, demonstrating a deliberate policy of persecution that violates the most fundamental principles of constitutional law.

## PARTIES

**1.** Plaintiff RAYMOND CAMPBELL is an individual and resident of El Paso County, Texas. Campbell owns and operates a sweepstakes business located at 5015 Trowbridge, El Paso, Texas 79903. Campbell is a registered sex offender who has fully complied with all registration requirements and completed his sentence under Texas law.

**2.** Defendant OFFICER SEAN MICHAEL DEENAN #3459 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Officer Deenan was acting under color of state law as an agent of the El Paso Police Department.

**3.** Defendant OFFICER JOHNATHAN RUIZ #3432 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Officer Ruiz was acting under color of state law as an agent of the El Paso Police Department.

**4.** Defendant OFFICER ROBERT ARTHUR SEELIG #3692 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903.

At all relevant times, Officer Seelig was acting under color of state law as an agent of the El Paso Police Department.

**5.** Defendant OFFICER CHRISTOPHER HERNANDEZ #3706 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Officer Hernandez was acting under color of state law as an agent of the El Paso Police Department.

**6.** Defendant OFFICER JUSTIN RODRIGUEZ #3577 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Officer Rodriguez was acting under color of state law as an agent of the El Paso Police Department.

**7.** Defendant OFFICER NATHAN RYAN LEGARRETTA #3710 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Officer Doe was acting under color of state law as an agent of the El Paso Police Department.

**8.** Defendant SERGEANT ROBERTO AZAR #2722 is sued in his individual and official capacity. He may be served at El Paso Police Department, 911 N. Raynor, El Paso, Texas 79903. At all relevant times, Sergeant Azar was acting under color of state law as a supervisory agent of the El Paso Police Department.

**9.** Defendant CITY OF EL PASO is a municipal corporation and political subdivision of the State of Texas, located at 300 N. Campbell, El Paso, Texas 79901. The City operates the El Paso Police Department and employed all Defendant Officers at the time of the incidents described herein.

3

## JURISDICTION AND VENUE

**10.** This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), as this action seeks redress for violations of Plaintiff's rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, enforceable through 42 U.S.C. § 1983.

**11.** This Court has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

**12.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as the events giving rise to this action occurred in El Paso County, Texas, within the Western District of Texas.

**13.** All conditions precedent to this action have been performed or have occurred.

## STATEMENT OF FACTS

### Background: Systematic Targeting Based on Sex Offender Status

**14.** Plaintiff Campbell owns and operates a lawful sweepstakes business at 5015 Trowbridge, El Paso, Texas, where his cousin Ricky Marquez is employed. Campbell is a registered sex offender who has fully complied with all legal requirements, completed his sentence, and operates his business in full compliance with all applicable laws.

**15.** For years prior to August 29, 2024, El Paso Police Department officers have systematically targeted Campbell's business, conducting what can only be described as fishing expeditions designed to harass customers and generate arrests on pretextual grounds. This harassment is motivated by animus toward Campbell's status as a registered sex offender, not legitimate law enforcement concerns.

**16.** The officers' pattern sometimes follows a predictable script: they observe customers parked at Campbell's business and claim to see minor infractions such as expired registration stickers or vehicles occupying two parking spaces in an otherwise empty lot. However, on many occasions,

officers approach and harass customers without even bothering to manufacture justification—they simply target individuals for the "crime" of being present at Campbell's business.

**17.** These contacts, whether based on fabricated pretexts or no pretext at all, serve as gateways for detention and searches aimed at discovering unrelated criminal activity—precisely the type of fishing expedition prohibited by the Fourth Amendment. The vast majority of these encounters result in no arrests whatsoever, yet officers continue the harassment pattern, demonstrating that their true purpose is intimidation and business interference, not legitimate law enforcement.

**18.** When officers do claim to observe infractions, many times after their fishing expedition fails to turn up evidence of any crime, they simply leave the premises without even addressing their stated reason for the initial contact—proving the fabricated nature of their justifications.

**19.** This atmosphere of constant, arbitrary harassment has created a climate of fear among Campbell's customers, many of whom avoid the business entirely rather than risk being subjected to unlawful detention, searches, and interrogation by El Paso Police officers.

**20.** Multiple El Paso Police officers have falsely claimed that the rear parking area of Campbell's business constitutes a "public alleyway" or "public easement," thereby justifying their presence and authority to detain individuals. This claim is factually and legally incorrect.

**21.** Upon information and belief, El Paso County records establish that Campbell's business property is entirely private with no public alley or easement.

**22.** Campbell repeatedly complained to El Paso Police officers and supervisors about the ongoing harassment, including multiple complaints to Defendant Sergeant Azar, that: (a) his business property is entirely private; (b) there is no public alley or easement; (c) police officers are not welcome on the property; and (d) the ongoing harassment of customers must cease.

5

**23.** Despite these clear warnings and repeated complaints through appropriate channels, Defendant Sergeant Azar failed to properly supervise his officers or take any corrective action. Instead, the harassment continued unabated and ultimately escalated to the violent events of August 29, 2024.

**24.** The failure of Sergeant Azar to address Campbell's legitimate complaints demonstrates deliberate indifference to his constitutional rights and shows that Campbell exhausted appropriate administrative channels before the situation reached a crisis point.

### The August 29, 2024 Assault: From Harassment to Brutality

**25.** On August 29, 2024, the ongoing pattern of harassment reached a violent crescendo when Defendants Deenan and Hernandez entered Campbell's private property to investigate a customer whose only "offense" was parking his pickup truck across two spaces in an otherwise empty parking lot.

**26.** Defendants Deenan and Hernandez ordered the customer from his vehicle and subjected him to a search. No drugs or weapons were found. The customer was ultimately arrested solely for outstanding traffic warrants—demonstrating how their fishing expedition, conducted on private property without reasonable suspicion, produced only minor traffic violations completely unrelated to any legitimate purpose for the initial contact.

**27.** The arrest for mere traffic warrants proves that Defendants' true purpose was harassment and fishing expeditions rather than addressing any serious criminal activity or public safety concern.

**28.** During this encounter, Campbell and his employee/cousin Ricky Marquez began recording with their cell phones and informed the officers that: (a) they were on private property; (b) the customer was parked with permission; (c) the officers were not welcome; and (d) they should leave immediately.

**29.** Campbell and Marquez were approximately 6 feet away from Defendants Deenan and Hernandez, except at times the range got closer when the defendants would approach them. Campbell and Marquez argued with Defendant Deenan, telling him that he had no right to be on the private property, that he should leave the customers alone, and disputing that the initial stop of the customer was valid to begin with.

**30.** Defendant Deenan argued that Campbell's property was a "public alleyway" and asserted his right to detain and investigate. Revealing his discriminatory intent, Defendant Deenan stated: "You know how many drugs we have found back here"—a clear admission that his purpose was to conduct fishing expeditions, not address any traffic violation.

**31.** As established in *United States v. Cortez*, 449 U.S. 411, 417 (1981), an officer may initiate an investigative stop only when he has "a particularized and objective basis" to suspect legal wrongdoing. Taking two parking spaces on private property with the owner's permission does not constitute such a basis. Moreover, stops may not be used as fishing expeditions for unrelated criminal activity. *Ohio v. Robinette*, 519 U.S. 33, 41 (1996).

**32.** Campbell and Marquez's argument that the initial stop was invalid was legally correct, as Defendants Deenan and Hernandez lacked any particularized and objective basis for detaining the customer.

**33.** Campbell and Marquez maintained an appropriate distance from the officers, never interfered with any lawful police activity, and merely exercised their clearly established rights to observe, record, and verbally challenge unlawful police conduct on Campbell's own property.

**34.** Additional officers arrived, including Defendants Azar, Ruiz, and Seelig. Rather than de-escalating the situation or correcting their fellow officers' unlawful conduct, these defendants participated in and facilitated the constitutional violations that followed.

**35.** After Defendants Deenan and Hernandez concluded their fruitless search and arrested the customer on outstanding warrants, Campbell and Marquez continued to record the encounter on their cell phones.

## The Brutal Assault

**36.** After concluding their fruitless search and arresting the customer on outstanding warrants, Defendant Deenan—clearly agitated by being filmed and questioned—suddenly and without justification grabbed Campbell and declared him under arrest.

**37.** Campbell protested the unlawful arrest, stating "I did nothing wrong." His protest was entirely justified, as he had committed no crime and had every right to observe and record police activity on his own property.

**38.** What happened next was a shocking display of police brutality motivated by Defendant Deenan's anger at being filmed and challenged. Defendants Deenan, Hernandez, and Ruiz attacked Campbell, forcefully slamming him onto the concrete parking lot and smashing his face and head into the ground.

**39.** Campbell offered no resistance whatsoever. Despite being clearly overpowered and submissive, Defendant Deenan pressed his knee into the back of Campbell's neck, causing extreme pain and difficulty breathing.

**40.** Campbell's decision to record police conduct and verbally challenge their unlawful presence clearly angered Defendant Deenan, who decided to silence Campbell through violence rather than address the legitimate legal challenges to his authority.

**41.** Even though Campbell was completely subdued and posed no threat, Defendant Seelig inexplicably deployed his department-issued taser three times, causing Campbell to lose

8

consciousness for several minutes. This use of force was entirely unnecessary, objectively unreasonable, and constituted torture of a defenseless man.

**42.** The force used against Campbell was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386 (1989), considering: (a) Campbell posed no immediate threat to officers or others; (b) he was not attempting to flee; (c) he had committed no crime; (d) he was completely subdued; and (e) the officers' own conduct created any tension in the situation.

**43.** Campbell was hospitalized for treatment of his injuries, including severe bruising, lacerations, and internal bleeding.

**Supervisory Participation in Constitutional Violations**

**44.** While Campbell was being brutally assaulted by his subordinate officers, Defendant Sergeant Azar was not attempting to stop the obvious constitutional violations occurring under his supervision. Instead, Azar was inside Campbell's business conducting his own unlawful search.

**45.** Azar entered Campbell's business without consent, warrant, or exigent circumstances and began photographing Campbell's sweepstakes machines with his personal cell phone. This conduct constituted an unlawful search in violation of the Fourth Amendment.

**46.** Azar's warrantless search of Campbell's business was captured on video, providing objective evidence of his active participation in the constitutional violations rather than any attempt to supervise or correct his officers' misconduct.

**47.** Azar knew or should have known that Defendants Deenan and Hernandez lacked any particularized objective basis for their initial customer stop and were conducting unlawful fishing expeditions. Despite this knowledge, Azar chose to participate in the violations by conducting his own warrantless search rather than intervening to protect Campbell's constitutional rights.

9

**48.** Azar's conduct demonstrates that the constitutional violations were not the result of rogue officers acting beyond their training, but rather a coordinated effort by supervisory and line personnel to harass Campbell, his business, and search his property without legal justification.

**Discriminatory Treatment During Detention**

**49.** Campbell's ordeal did not end with the assault. During his booking process, El Paso Police officers made derogatory comments about his status as a registered sex offender.

**50.** These officers deliberately disclosed Campbell's status as a registered sex offender to other inmates, placing him at serious risk of harm, as registered sex offenders are frequently targeted for violence in jail settings.

**51.** This deliberate disclosure served no legitimate penological purpose and was done solely to humiliate Campbell and expose him to potential violence.

**Fabrication of Evidence to Manufacture Probable Cause**

**52.** Upon information and belief, the named Defendants falsified factual allegations in police reports and statements to justify a finding of probable cause for interfering with an officer's public duties and resisting arrest against Campbell.

**53.** Campbell was charged with "interfering with a police officer's duties" and "resisting arrest"— charges fabricated to cover up the officers' misconduct. These false charges were subsequently dismissed by the El Paso District Attorney's Office on February 11, 2025, confirming their baseless nature.

**54.** The fabrication of evidence violates the Fourteenth Amendment's Due Process Clause. As the Fifth Circuit has recognized, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015).

10

**55.** The truth is that Campbell never committed any crime. Campbell was only exercising his clearly established constitutional rights as a property owner observing police harassment of a customer on his own premises. Campbell had every right to be on his property, to film police conduct, and to question officers about their lack of authority to be on his private property.

**56.** However, Defendant Deenan did not like being filmed and did not like having his unlawful actions questioned and challenged. Therefore, Defendants decided to silence Campbell through violence and fabricated charges rather than address his legitimate legal challenges to their conduct.

**57.** The Defendants' fabrication of charges was designed solely to provide post-hoc justification for their unlawful assault and to retaliate against Campbell for exercising his constitutional rights and challenging their unlawful conduct.

**Ongoing Harassment and Retaliation**

**58.** Rather than ending the harassment after Campbell's false charges were dismissed, Defendants have escalated their retaliatory conduct.

**59.** Defendant Rodriguez has repeatedly returned to Campbell's business to harass customers, despite being told multiple times that he is not welcome on the private property.

**60.** On November 10, 2024, Defendant Rodriguez entered Campbell's property in police vehicle C18155 to investigate an unoccupied vehicle with expired registration. When Rodriguez began ordering a customer around, Campbell's employee Marquez recorded the incident and requested Rodriguez leave. Rodriguez departed without issuing any citation—further evidence that his purpose was harassment, not law enforcement.

**61.** On November 14, 2024, Rodriguez returned in police vehicle C18147. When confronted by Marquez, Rodriguez mockingly repeated words from a "no parking" sign, demonstrating his contempt for property rights.

**62.** On November 15, 2024, Rodriguez escalated by physically blocking the exit door of the business with his foot and body to prevent anyone from leaving while he harassed a customer. This prompted Marquez to call 911.

**63.** Most revealing of his retaliatory intent, Rodriguez admitted to Campbell's private investigator that he intended to continue harassing customers, stating: "a judge would applaud my actions" and "I'm gonna continue investigating customers."

**64.** Rodriguez has repeatedly driven by the business with headlights off, shining a spotlight into the premises—conduct designed solely to intimidate. Now, partnered with Defendant Legarretta, their pattern of constitutional violations have escalated.

**65.** On August 5, 2025, at approximately 2:00 AM, Defendant Rodriguez returned to harass customers. When Campbell's employee Ricky Marquez confronted Rodriguez and told him to leave the private property, Rodriguez stated, in the presence of security cameras that captured everything: "Next time I come you better have your blue card, because you are a sex offender." This statement was directed at Marquez, who is not a registered sex offender, demonstrating Rodriguez's irrational targeting of anyone associated with Campbell based on discriminatory animus.

**66.** Defendants Rodriguez and Legarretta continue conducting unlawful fishing expeditions without reasonable suspicion solely to harass Campbell's customers. On August 13, 2025, they confronted a customer legally parked in Campbell's rear lot and ordered him from his vehicle to conduct a warrantless search. During the search, captured on video by Campbell's cousin, Officer Legarretta pulled an open beer container from the vehicle and displayed it to the camera, stating: "These are the kinds of customers that visit your establishment." Legarretta then poured out the liquid and discarded the container. Despite this theatrical display of alleged wrongdoing, no arrests

12

were made—proving the encounter served no legitimate law enforcement purpose but was designed solely to defame Campbell's business and intimidate his customers.

<strong>Unlawful Trespassing and Business Interference</strong>

**67.** Defendant Rodriguez has repeatedly trespassed on the business property despite being told multiple times he is not welcome and has no warrant or legal justification for entry. On one occasion, video evidence shows Defendant Rodriguez walking into the business when Marquez is telling him he is not welcome and not to enter the property.

**68.** The incidents described herein represent only a portion of Defendant Rodriguez's systematic campaign of harassment and intimidation against Campbell and his business. Rodriguez has engaged in numerous additional acts of harassment not specifically detailed in this complaint, including driving at excessive speeds through Campbell's parking lot to intimidate and scatter customers, conducting pretextual stops of customers leaving the premises, and other acts of intimidation designed to damage Campbell's business. Although Campbell possesses video evidence documenting many of these additional incidents, they are too numerous to include in their entirety in this pleading.

**69.** The harassment extends beyond the named defendants to other El Paso Police officers who systematically target Campbell's customers to damage his business. On August 23, 2025, two officers conducted a warrantless search of a legally parked customer's vehicle. After finding aluminum foil, the officers proclaimed on camera that it was drug paraphernalia and told the customer: "If this place allows the use of fentanyl that's on them, but you should be careful with the use of fentanyl because it's very dangerous." The customer repeatedly denied possessing drug paraphernalia or using fentanyl. Despite the officers' inflammatory accusations about drug activity,

no arrests were made—demonstrating their true purpose was to publicly associate Campbell's business with illegal drug use and drive away customers.

**70.** The harassment has caused Campbell significant business losses, as customers avoid his establishment due to fear of police harassment.

**Municipal Pattern of Constitutional Violations**

**71.** Campbell's brutal assault by Defendants is not an isolated incident but part of a well-established pattern of excessive force and constitutional violations by El Paso Police Department officers. The City has paid millions in settlements and legal fees defending similar cases, demonstrating deliberate indifference to citizens' constitutional rights.

**72.** Evidence of this pattern includes multiple federal lawsuits filed against El Paso police officers in recent years, with the City paying millions in settlements and legal fees:

**Mental Health Crisis Cases (All Under Chief Greg Allen's Leadership):**

- **Daniel Ramirez v. City of El Paso** (2017): Officer Ruben Escajeda tased Daniel Ramirez, who was attempting suicide by hanging, causing his death. Federal Judge David Guaderrama ruled in a 108-page decision that a jury could find the City had inadequate training policies for mental health crises and that Chief Allen was deliberately indifferent. The City settled for a six-figure amount in 2023.

- **Erik Salas-Sanchez v. City of El Paso** (2017): Officer Mando Kenneth Gomez shot Erik Salas-Sanchez, 22, multiple times in the back inside his mother's house during a mental health crisis. The City paid a $1.2 million settlement in 2022.

- **Francisco Ramirez v. Leon Fonseca**, EP-18-CV-33-KC (2018): Officer shot suicidal man multiple times without provocation after entering backyard without announcing presence.

14

- **Roswitha Saenz v. City of El Paso** (2014): Officer Vincent Flores shot and killed Gilbert Saenz during a mental health transport. The City spent $394,745 in legal fees defending this case before it settled.

### Excessive Force Against Citizens:

- **Anna Barnes v. City of El Paso**, EP-22-CV-161-KC (2022): Officers Jarred Frank and Oliver Meise repeatedly punched handcuffed mother Anna Barnes in the face, breaking her nose, while her five children watched. Frank received only an 8-hour suspension despite admitting to striking her face. The case is ongoing.

- **Rene Camacho v. City of El Paso**, EP-15-CV-00318-PRM-RFC (2016): Officer grabbed plaintiff's head while face-down on ground and punched it into pavement, then falsified facts to justify force.

- **E.R. v. Marco Jasso**, EP-18-CV-00298-DCG (2019): Officer assaulted minor female, threw her to ground, kneed her back, elbowed her face, then unlawfully entered her home.

- **Sinegal v. City of El Paso**, 3:19-CV-00107-KC (2022): Officers charged across street and tackled man for merely observing his brother's arrest.

73. These cases demonstrate a clear pattern under Chief Greg Allen's leadership (2008-2023) where federal judges have repeatedly found that the El Paso Police Department failed to institute proper procedures for dealing with mental health crises, failed to properly investigate and discipline officers involved in excessive force, and failed to train officers appropriately. As attorneys Lynn Coyle and Chris Benoit noted, the City's willingness to settle these cases "is unprecedented in El Paso because it is rare for judges to allow families to proceed against municipalities in excessive force lawsuits."[1]

---

[1] Elida S. Perez, Two Deadly Force Lawsuits Against the City and El Paso Police Remain Pending, Following Settlement of Two Others, El Paso Matters (Apr. 19, 2022).

**74.** El Paso taxpayers have paid more than $1.7 million since 2016 just to defend police officers and the city in four deadly force lawsuits, with the actual figure likely being significantly higher. When combined with settlement payments exceeding $1.8 million in just two mental health cases, the total cost to taxpayers approaches $4 million.

**75.** According to allegations in federal lawsuits against the City, from 2012 to 2016, close to 57% of those who died in police custody had exhibited signs of mental illness. In 2015, over 66% of residents killed during officer-involved shootings exhibited signs of mental illness, and that number grew to 100% of shooting deaths involving EPPD officers in 2016.

**76.** Chief Allen's policy decisions actively hindered accountability. According to federal court findings, Chief Allen is the policy maker for the City and has direct knowledge of his officers' use of excessive force and has failed to remedy the issue by failing to discpline, train, or otherwise address the City's excessive use of force problem, and that this failure acquiesced to the officers' use of excessive force. See *Ramirez v. Escajeda*, 298 F.Supp.3d 933, 948 (USDC - West Dist 2018)

**77.** The *Barnes* case exemplifies the inadequate disciplinary system: despite Officer Frank admitting in a sworn affidavit that he struck a handcuffed woman's face multiple times, breaking her nose, he received only an 8-hour suspension while Officer Meise received no discipline at all.

**78.** Despite this overwhelming pattern of constitutional violations and judicial findings, the City has failed to implement adequate training, supervision, or disciplinary measures. This deliberate indifference constitutes municipal policy under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## CAUSES OF ACTION

**COUNT I:    VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS -**
**FALSE ARREST**

**79.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**80.** Defendants Deenan, Hernandez, Ruiz, Seelig, and Azar, acting under color of state law, arrested Campbell without probable cause in violation of the Fourth and Fourteenth Amendments.

**81.** No reasonable officer could have believed that probable cause existed to arrest Campbell for "interfering with public duties" when he was merely observing and recording police activity on his own property while maintaining appropriate distance.  No reasonable officer could have believed that probable cause existed to arrest Campbell for "resisting arrest" when the arrest was without probable cause and Campbell was not resisting.

**82.** The arrest was motivated by animus toward Campbell's status as a registered sex offender and retaliation for his exercise of constitutional rights.

**83.** As a direct and proximate result of this unlawful conduct, Campbell suffered damages including loss of liberty, emotional distress, damage to reputation, medical expenses, and other injuries.

**COUNT II:    VIOLATION OF FOURTH AMENDMENT - EXCESSIVE FORCE**

**84.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**85.** Defendants Deenan, Hernandez, Ruiz, and Seelig used objectively unreasonable force against Campbell in violation of the Fourth Amendment.

**86.** The force used—slamming Campbell unto the concrete floor, pressing knee on his neck, and tasing him three times while he was subdued—was grossly disproportionate to any threat posed and violated clearly established law.

**87.** Under *Graham v. Connor*, the force was objectively unreasonable considering Campbell posed no immediate threat, was not fleeing, had committed no crime, and was fully subdued.

**88.** As a direct and proximate result, Campbell suffered severe physical injuries, emotional trauma, medical expenses, and other damages.

## COUNT III:  VIOLATION OF FOURTEENTH AMENDMENT - EQUAL PROTECTION

**89.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**90.** Defendants' systematic targeting and harassment of Campbell's business constitutes a violation of equal protection under the Fourteenth Amendment.

**91.** Defendants treated Campbell differently from other similarly situated business owners without any rational basis for such disparate treatment.

**92.** The disparate treatment was motivated by animus toward Campbell's status as a registered sex offender, constituting impermissible discrimination.

**93.** No legitimate law enforcement purpose justified the pattern of harassment, pretextual stops, and fishing expeditions conducted at Campbell's business.

## COUNT IV:  VIOLATION OF FOURTEENTH AMENDMENT - DELIBERATE INDIFFERENCE TO SAFETY

**94.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**95.** During Campbell's detention, Defendants deliberately disclosed his status as a registered sex offender to other inmates.

**96.** Defendants knew or should have known that registered sex offenders face heightened risk of violence and harm from other inmates in custodial settings.

**97.** The disclosure served no legitimate penological purpose and was done with deliberate indifference to Campbell's safety.

**98.** This conduct violates the Fourteenth Amendment's Due Process Clause, which prohibits punishment of pretrial detainees who have not been convicted of any crime..

## COUNT V:    VIOLATION OF FOURTH AMENDMENT - UNLAWFUL TRESPASS AND HARASSMENT

**99.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**100.** Defendants' repeated entry onto Campbell's private property without consent, warrant, or exigent circumstances violates the Fourth Amendment.

**101.** Campbell has repeatedly told officers they are not welcome on his property, yet Defendant Rodriguez and others continue to trespass and conduct unlawful fishing expeditions.

**102.** Most of these intrusions result in no arrests, no citations, and no evidence of criminal activity, yet officers continue the pattern of harassment, proving their conduct serves no legitimate law enforcement purpose.

**103.** Most recently, on August 13, 2025, Defendants Rodriguez and Legarretta conducted an unlawful search of a customer and his vehicle without reasonable suspicion, consent, or warrant, demonstrating the ongoing and escalating nature of these constitutional violations.

**104.** These intrusions serve no legitimate law enforcement purpose and are conducted solely to harass Campbell and his customers based on his status as a registered sex offender.

**105.** The ongoing trespass and harassment has caused Campbell significant business losses and emotional distress.

## COUNT VI:   CONSPIRACY UNDER 42 U.S.C. § 1983

**106.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**107.** Defendants conspired among themselves to violate Campbell's constitutional rights through false arrest, excessive force, harassment, and retaliation.

**108.** The conspiracy is evidenced by the coordinated nature of their conduct, shared false narratives, and ongoing pattern of harassment.

**109.** Each defendant participated in the conspiracy and committed overt acts in furtherance of the conspiracy.

## COUNT VII: MUNICIPAL LIABILITY UNDER MONELL

**110.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**111.** The City of El Paso maintains customs, policies, and practices that violate citizens' constitutional rights, including:

a. Tolerating harassment and discrimination against registered sex offenders; b. Failing to train officers regarding constitutional limitations on police authority; c. Failing to discipline officers who violate citizens' rights; d. Permitting pretextual stops and fishing expeditions without reasonable suspicion; e. Inadequate supervision of officers with known patterns of misconduct.

**112.** These policies were implemented and maintained with deliberate indifference to their obvious consequences and were the moving force behind the violations of Campbell's rights.

**113.** The extensive pattern of similar violations by El Paso Police Department officers demonstrates that these policies are so persistent and widespread as to constitute official municipal policy.

## COUNT VIII: SUPERVISORY LIABILITY AND DIRECT PARTICIPATION

**114.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**115.** Defendant Azar is liable both as a supervisor who was deliberately indifferent to constitutional violations and as a direct participant in those violations.

**116.** As a supervisor, despite receiving multiple formal complaints from Campbell about ongoing harassment, unlawful trespassing, and constitutional violations, Azar failed to take any corrective action.

**117.** As a direct participant, Azar conducted his own warrantless search of Campbell's business while his subordinates were committing assault and false arrest, demonstrating active participation in the constitutional violations.

**118.** Azar had actual knowledge of the pattern of harassment and constitutional violations, received formal complaints about the misconduct, but chose to participate in rather than prevent the violations during the August 29, 2024 incident.

**119.** Azar's conduct—both his supervisory deliberate indifference and his direct participation in warrantless searches—was a proximate cause of the escalating harassment that culminated in Campbell's brutal assault.

**120.** The video evidence of Azar's warrantless search eliminates any claim of qualified immunity and establishes his direct liability for constitutional violations.

### COUNT IX:  VIOLATION OF FOURTEENTH AMENDMENT - FABRICATION OF EVIDENCE

**121.** Plaintiff incorporates all previous allegations as if fully set forth herein.

**122.** Defendants deliberately fabricated evidence by falsifying material facts in police reports and statements to manufacture probable cause for Campbell's arrest.

**123.** The fabricated charges of "interfering with a police officer's duties" and "resisting arrest" were designed to cover up Defendants' constitutional violations and provide post-hoc justification for their unlawful conduct.

**124.** Campbell's subsequent prosecution based on these fabricated charges violated his right to due process under the Fourteenth Amendment.

21

**125.** The dismissal of all charges by the El Paso District Attorney's Office confirms that no probable cause existed and that the charges were fabricated.

**126.** Such deliberate fabrication of evidence violates clearly established constitutional law and subjects Defendants to individual liability regardless of their official capacity.

**COUNT X:    VIOLATION OF SUBSTANTIVE DUE PROCESS - INTERFERENCE WITH BUSINESS RELATIONS**

127. Plaintiff incorporates all previous allegations as if fully set forth herein.

128. Campbell has a protected liberty and property interest in operating his lawful business and maintaining customer relationships free from arbitrary government interference.

129. Defendants' systematic harassment of customers, including conducting warrantless searches, making derogatory statements about the business, and creating an atmosphere of fear and intimidation, has substantially interfered with Campbell's business operations and customer relationships.

130. This interference lacks any legitimate governmental purpose and is designed to punish Campbell for his status as a registered sex offender and force closure of his business.

131. Such arbitrary interference with lawful business operations violates substantive due process under the Fourteenth Amendment.

132. As a direct result of Defendants' conduct, Campbell has suffered significant business losses, damaged reputation, loss of customers, and diminished earning capacity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

**A.** Enter judgment in favor of Plaintiff and against all Defendants;

**B.** Award compensatory damages in an amount to be determined at trial for:

1.  Physical injuries and medical expenses

22

2. Pain and suffering, past and future

3. Mental anguish and emotional distress, past and future

4. Loss of enjoyment of life

5. Damage to reputation

6. Business interference damages, including:

   o Lost revenue and profits

   o Diminished business value

   o Loss of customers and goodwill

   o Damage to business reputation

   o Costs of additional security measures

   o Lost prospective business opportunities

7. Lost income and diminished earning capacity

8. All other damages proximately caused by Defendants' conduct

**C.** Award punitive damages against individual defendants to punish their egregious conduct and deter similar violations;

**D.** Enter declaratory judgment that Defendants' actions violated Plaintiff's constitutional rights;

**E.** Enter permanent injunctive relief:

1. Prohibiting further harassment or discrimination against Plaintiff

2. Prohibiting trespass on Plaintiff's private property without warrant or consent

3. Prohibiting interference with Plaintiff's lawful business operations

4. Prohibiting harassment, detention, or search of Plaintiff's customers without reasonable suspicion

5. Prohibiting derogatory statements about Plaintiff's business or customers

6. Requiring implementation of adequate training regarding constitutional rights of registered sex offenders

7. Prohibiting disclosure of inmates' sex offender status without legitimate penological purpose

8. Requiring adequate supervision and discipline of officers

**F.** Award attorneys' fees and costs under 42 U.S.C. § 1988;

**G.** Award pre- and post-judgment interest; and

**H.** Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Ramon Campbell
6005 Isabella Dr
El Paso, TX 79912
(915) 247-6173

24